# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-4555

VICKY M. QUINN, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 9, 2019                                       Decided July 11, 2019)

*Kenneth M. Carpenter*, of Topeka, Kansas, with whom *Francis M. Jackson* and *Penelope E. Gronbeck*, both of South Portland, Maine, were on the brief for the appellant.

*Drew A. Silow*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Richard A. Daley*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before SCHOELEN, PIETSCH, and ALLEN, *Judges*.

ALLEN, *Judge*: The appellant Vicky Quinn served our Nation honorably in the United States Navy from June 1995 to April 1999. Record (R.) at 1815, 2196. She appeals a July 31, 2017, decision of the Board of Veterans' Appeals that denied her service connection for several conditions and an increased disability rating for another.[1] Perhaps surprisingly, we need not explore the contours of her claims or the Board's decision about them, however, because they turn out not to relate to the resolution of this appeal.

This case turns on the meaning of the right Congress conferred on claimants to have "an opportunity for a hearing" before the Board "decide[s] any appeal." 38 U.S.C. § 7107(b) (2016).[2] Specifically, we consider whether section 7107(b) entitles a claimant such as the appellant, who had one hearing before the Board resulting in a remand to a regional office (RO) for further

---

[1] R. at 2-11. The Board denied service connection for a bilateral shoulder disability, a right groin condition, and asthma. It also denied an increased disability rating for the appellant's service-connected cystitis/UTI. *Id*. As we explain, this appeal doesn't turn on the nature of the appellant's claims.

[2] The statute no longer contains this language. It was amended as part of the Veterans Appeals Improvement and Modernization Act of 2017 (VAIMA), Pub. L. No. 115-55, 131 Stat. 1112, § 2(f) (Aug. 23, 2017). The appellant's claims are not subject to the VAIMA.

development, to another Board hearing when the RO returns her claims to the Board after that additional development is completed. The Secretary argues that a claimant need not be afforded a hearing in such circumstances. We disagree that the Secretary can deny such a claimant the congressionally established right to a hearing. Because section 7107(b) unambiguously entitles a person in the appellant's position to a second hearing, and because the VA's error denying the appellant this important procedural right was not harmless, we will vacate the July 31, 2017, Board decision and remand the matter for further proceedings consistent with this decision.

## I. FACTS AND PROCEDURAL HISTORY

There are few facts necessary to decide this appeal, and the parties don't dispute them. In April 2011, the appellant filed her claim for disability compensation that began the road to this appeal. R. at 2194-2206. In March 2012, the RO issued a rating decision denying the appellant service connection for four disabilities (asthma, bilateral hearing loss, a bilateral shoulder disability, and a groin disability) and granting service connection for another (cystitis/UTI) at a 40% rating. R. at 1790-1816. The appellant disagreed with this decision, R. at 1783, and eventually perfected her appeal to the Board, challenging the denial of service connection and the rating assigned to her service-connected cystitis/UTI. R. at 1713-14. On August 7, 2014, the appellant testified at a Board hearing. R. at 1357-93.

On April 21, 2015, the Board issued a decision in which it denied the appellant's appeal concerning bilateral hearing loss (a decision the appellant did not appeal to the Court) and remanded the four other issues, instructing the RO to acquire relevant medical records and to schedule appropriate VA examinations that would produce new medical reports. R. at 1341-47. The Board also instructed the RO to "readjudicate the Veteran's pending claims in light of all additional evidence added to the record. If any benefits sought on appeal remain denied," the appellant should be issued a Supplemental Statement of the Case (SSOC) and be given an "opportunity to respond" to it. R. 1347.

The RO complied with the Board's remand instructions. After the Board-ordered further development, the RO again denied the four claims in an SSOC that listed the newly developed medical evidence among other evidence the RO considered. R. at 225-43. In fact, the RO's analysis depended in large part on the new medical evidence. *See, e.g.*, R. at 237-38 (discussing the September 15, 2016, VA examination in its reasons or bases for denying service connection for a

bilateral shoulder disability), 239 (discussing the same evidence in denial of service connection for right groin disorder). In a December 5, 2016, letter, the appellant disagreed with the denial of her claims and requested another hearing "so that she [could] offer further evidence in the form of her testimony" before the Board decided her appeal. R. at 218.

On December 19, 2016, the RO informed the appellant that it was transferring her records to the Board so that the Board could "reach a decision on [her] appeal." R. at 203. Though the RO acknowledged her request for a second hearing, the RO said that, under 38 C.F.R. § 20.1507,[3] she was not entitled to a hearing before the Board decided her appeal because she had already been afforded an opportunity to have such a hearing – the one that was held before the remand; the RO clearly and unequivocally stated it would not schedule a second hearing. R. at 203.

In its July 31, 2017, decision, the Board denied the appellant's claims. R. at 2-9. The Board didn't address the request for a second hearing at all.

## II. ANALYSIS

We begin by addressing, as a preliminary matter, the Secretary's argument that we shouldn't exercise our discretion to hear the appellant's arguments because she failed to raise them to the Board. Then we consider what section 7107(b) means. After determining that the plain meaning of that provision entitles the appellant to a second hearing under the circumstances we address here, we assess whether VA's error prejudiced her. It did, or at least we can't say that it didn't. Our analysis leads us to remand this matter to the Board.

---

[3] This regulation was effective December 5, 2008, to February 18, 2019. Before Congress passed the VAIMA, the regulation stated: "Upon request, a participant is entitled to a hearing before the Board as provided in §§ 20.700 through 20.717, and 20.1304, subject to the following limitations: (1) Only one hearing before the Board will be conducted. " 38 C.F.R. 20.1507(b), (b)(1) (2018). It would seem at first blush that this provision would be potentially important for deciding this appeal. It is not. The Secretary made clear at oral argument that "it's not relevant to this appeal" because it applies only to expedited claims. Oral Argument (O.A.) at 56:26-:45, *Quinn v. Wilkie*, No. 17-4555, https://www.youtube.com/watch?v=H0aRLkF4cSc. We agree with the Secretary, and we will not discuss it further.

*A. Exhaustion*[4]

The Secretary argues that the appellant raised the argument of entitlement to a second hearing under section 7107(b) for the first time on appeal because she did not reassert her request to the Board directly, implicating the law of issue exhaustion. Secretary's Initial Br. at 4-7. He urges us to decline to hear the appellant's arguments. *Id.* However, the appellant did all that was required to raise the issue. After all, she requested a hearing and was told no. R. at 203, 218. She is not raising the argument for the first time at this Court; so there is no call for us to exercise discretion. *See Maggitt v. West*, 202 F.3d 1370, 1378 (Fed. Cir. 2000). Thus, we turn to the proper interpretation of section 7107(b).

*B. Entitlement to a Second Hearing Under 38 U.S.C. § 7107(b)*

After a first trip to the Board, involving a hearing and resulting in a remand to the RO for further development, is a claimant entitled to another Board hearing under 38 U.S.C. § 7107(b) when the RO returns her claims to the Board after that additional development? This is the question we're called to answer in this case. To do so, we must interpret section 7107(b). That statutory provision provided at the time of the appellant's administrative appeal that "[t]he Board shall decide any appeal only after affording the appellant an opportunity for a hearing." 38 U.S.C. § 7107(b) (2016).

Statutory interpretation is a pure question of law that the Court reviews de novo. *See Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018). The basics of statutory interpretation are well established. "In determining the meaning of a statutory provision, 'we look first to its language, giving the words used their ordinary meaning.'" *Artis v. Dist. of Columbia*, 138 S. Ct. 594, 603 (2018) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)); *see Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) ("The starting point in interpreting a statute is its language."). This principle is directed not only to a court engaging in statutory interpretation: "Where a statute's language carries a plain meaning, the duty of an administrative agency is to

---

[4] In his initial brief, the Secretary argued that the Court should exercise its discretion to require issue exhaustion—and not to hear the appellant's arguments—because she didn't raise them to the Board. Secretary's Initial Brief (Br.) at 4-7. In her reply brief, the appellant seemingly construed the Secretary's arguments as ones of waiver, laches, and the improper preservation of the issue. *See* Appellant's Initial Reply Br. at 1. Then, at oral argument, discussion of these conceptually distinct arguments often blended. *See* O.A. at 2:40-4:30, 18:32-19:14, 45:05-48:30. Here, we address only the Secretary's initial argument regarding issue exhaustion. To the extent the Secretary made different arguments at oral argument for the first time, we won't entertain them. *See Sellers v. Wilkie*, 30 Vet.App. 157, 166 (2018) (citing *McFarlin v. Conseco Servs., L.L.C.*, 381 F.3d 1251, 1263 (11th Cir. 2004); *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1332-33 (Fed. Cir. 2001); *Tarpley v. Greene*, 684 F.2d 1, 7 n.17 (D.C. Cir. 1982)).

follow its commands as written, not to supplant those commands with others it may prefer." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018).

In interpreting the meaning of section 7107(b), we are not writing on a blank slate. In *Cook v. Wilkie*, 908 F.3d 813 (Fed. Cir. 2018) ("*Cook II*"), the Federal Circuit interpreted section 7107(b) and performed much of the work necessary to resolve the question before us.[5] We're guided here by its analysis.

In *Cook II,* the Federal Circuit had to determine whether a claimant who had been afforded a Board hearing and then appealed an adverse decision to this Court was entitled to another hearing after we vacated the Board's decision on appeal and remanded the matter. *Id*. at 814-15. The Federal Circuit held that section 7107(b) unambiguously entitles a claimant "to an opportunity for an additional Board hearing in these circumstances."[6] *Id.* at 817-18. Using the Federal Circuit's reasoning as our guidepost, we hold that under section 7107(b) the appellant is entitled to an opportunity for another hearing under the particular facts of the case before us.

We reiterate what section 7107(b) says: "The Board shall decide[7] any appeal only after affording the appellant an opportunity for a hearing." "Thus," as the Federal Circuit observed, "before the Board 'decide[s] any appeal,' it must afford the appellant 'an opportunity for a hearing.'" *Cook II*, 908 F.3d at 818.

We follow the Federal Circuit's approach and begin with the word "any." We see no reason to deviate from how the Federal Circuit interpreted the plain meaning of "any," even if we were at liberty to do so:

> As the Supreme Court has recently observed, "the word 'any' naturally carries 'an expansive meaning.'" When coupled with a singular noun in an affirmative context, "any" typically "refer[s] to a member of a particular group or class without distinction or limitation" and "impl[ies] every member of the class or group." In

---

[5] In *Cook II*, the Federal Circuit affirmed our decision in *Cook v. Snyder*, 28 Vet.App. 330 (2017) ("*Cook I*"), albeit on different grounds.

[6] We do not consider the Federal Circuit's use of the phrase "in these circumstances," to limit *Cook II* only to its precise facts. As any court does when applying law to fact, the Federal Circuit couched its analysis with respect to the facts of the particular case before it—thus the "in these circumstances" language. 908 F.3d at 818. Indeed, the Federal Circuit could resolve only the matter actually before it given Article III's case-or-controversy constraints. *See* U.S. CONST. art. 3, § 2, cl. 1.

[7] Note that section 7107(b) speaks in terms of the verb *decide*, not the noun *decision*. Given this use of the word, we need not address what constitutes a "decision," or whether a given action of the Board is a "decision" matters with respect to a claimant's right to have a Board hearing. *See, e.g.*, Secretary's Supplemental Memorandum (Supp. Memo.) at 7; O.A. at 28:30-:45, 30:30-:50, 31:45-33:30.

[section] 7107(b), the word "any" modifies the singular "appeal" in an affirmative context, *i.e.*, the statute imposes a positive duty on the Board to provide an opportunity for a hearing before it decides any appeal. Accordingly, the phrase "any appeal" indicates that the Board is not free to curate which appeals are entitled to "an opportunity for a hearing." The Board must provide such an opportunity before it decides every appeal.

*See id.* (internal citations omitted).

Having established the broad scope of the right to a hearing through the meaning of "any," we next consider whether the Board decides an "appeal" when it again reviews an RO's decision following the Board's remand to the RO for further development. As it did in *Cook II*, *see id.*, the text supplies an answer. An appeal is "[a] proceeding undertaken to have a decision reconsidered by a higher authority; esp[ecially], the submission of a lower court's or agency's decision to a higher court for review and possible reversal." BLACK'S LAW DICTIONARY (10th ed. 2014); *see Cook II*, 908 F.3d at 818 (citing this same dictionary definition). Using this definition, the Federal Circuit in *Cook II* determined that when this Court vacated a Board decision and remanded the matter for a new Board decision, the Board was deciding an "appeal." *Id.* (reasoning that, in those circumstances, "on remand the Board must *review* the RO's decision *anew* in accordance with the Veterans Court's instructions" (emphasis added)).

The same is true in the factual situation before us. Here, in 2015 the Board remanded the appellant's claims to the RO. Like this Court's vacatur of the Board decision in *Cook II*, *id.*, a Board remand to the RO for further development and readjudication effectively "nullif[ies] or cancel[s]" the legal effect of the prior rating decision and Statement of the Case (SOC), BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "vacate"); *see Cook II*, 908 F.3d at 818 (citing this same "vacate" dictionary definition). This is so because the RO must then decide anew whether to grant or continue to deny benefits upon consideration of the new evidence or records. And then when the RO returns an SSOC to the Board, "the Board must *review* the RO's decision *anew*." *Id.* (emphasis added). In other words, the Board must again "decide" the "appeal." There is no way to think of this process as anything other than a "proceeding undertaken to have a decision reconsidered by a higher authority." *See id.* Because the Board must decide an appeal in these circumstances, we conclude that section 7107(b) unambiguously[8] requires it to afford the appellant an opportunity for another hearing. *See id.*

---

[8] Because we conclude that the statute's meaning is clear, there is no need to consider whether we should defer to the Agency's interpretation of the statute under *Chevron*. *See Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council,*

To be clear, we decline the Secretary's invitation to insert the words "on the merits" into the statute – to insert them would limit a right to a hearing to matters that constitute a final decision on the merits that would allow an appeal to this Court. *See* O.A. at 24:50-26:30. Congress did not limit the right to hearing in that way. In fact, Congress was expansive in providing a right to a hearing in "any" situation in which the Board "decide[s] an appeal." Moreover, our interpretation avoids absurd results that would flow from the Secretary's interpretation. *See, e.g., United States v. Brown*, 333 U.S. 18, 27 (1948) ("No rule of construction necessitates our acceptance of an interpretation resulting in patently absurd consequences."); *Atencio v. Wilkie*, 30 Vet.App. 74, 84 (2018) (courts should avoid statutory and regulatory interpretations that lead to absurd results). To take just one example, under the facts of *Cook II*, VA must afford a claimant a second hearing on the same record following a reasons-or-bases vacatur and remand from this Court to the Board because vacatur vitiates the Board decision's finality. In other words, a new hearing is required when nothing has changed. But under the Secretary's argument in this case, VA need not afford a second hearing after further development of the record when much has changed. That just makes no sense, and we don't lightly assume Congress acted to implement such counterintuitive results.

We add one final point. The statute also makes plain that the right to an opportunity for a hearing is not one that is within the discretion of VA.[9] Congress used the mandatory word "shall" in connection with the right to an opportunity for a hearing before the Board "decide[s] any appeal." Absent a textual reason to believe otherwise, something not present here, the word "shall" leaves no room for discretion. *Kingdomware Techs., Inc. v. United States*, __ U.S. __, 136 S. Ct. 1969, 1977 (2016) (stating that "the word 'shall' usually connotes a requirement"); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (recognizing that "shall" is "mandatory" and "normally creates an obligation impervious to judicial discretion").

Now that we've identified error in the denial of the appellant's request for a Board hearing, we must consider whether this error prejudiced her. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error").

---

*Inc.*, 467 U.S. 837, 842-43 (1984). And, in any event, the Secretary doesn't argue that we should defer to any regulation.

[9] Note, though, that 38 U.S.C. § 7105 explicitly provides that the provision of a hearing is subject to "regulations of the Secretary." VA's regulations in some circumstances allow VA to move forward without a requested hearing actually taking place, such as when an appellant fails to appear for a scheduled hearing without showing good cause; the validity of those regulations isn't implicated here. *See, e.g.*, 38 C.F.R. § 20.704(d) (formerly 20.702(d)).

7

*C. Prejudicial Error*

In *Cook I*, for purposes of determining whether VA's denial of a hearing was harmless,[10] we weighed heavily the appellant's "assertion that he requested a Board hearing to submit evidence." 28 Vet.App. at 344. Here too the appellant asserts that she requested a Board hearing to submit testimonial evidence. R. at 218. Under 38 U.S.C. § 7104(a), enacted with section 7107(b), the Board must make its decision "based upon the entire record in the proceeding and upon consideration of all evidence and material of record." 38 U.S.C. § 7104(a); *see Cook I*, 28 Vet.App. at 344. Though we acknowledge that in *Cook II* the Federal Circuit clearly didn't subscribe to *Cook I's* focus on "stages of appellate proceedings" for interpretative purposes, *see* 908 F.3d at 818, in *Cook I,* we used that concept in the harmless-error analysis, *see* 28 Vet.App. at 344,[11] as a kind of shorthand for an earlier point about how a claim can develop and evolve during its life, *see id.* at 342. And that makes sense because an appeal does, in fact, evolve. That evolution informs our assessment of harmless error.

The appellant alleges here that her case materially evolved after the Board-ordered development. *See* Appellant's Initial Br. at 8. And it's difficult to argue with that point given the evidentiary development that occurred after the Board's 2015 remand.[12] Thus, tracking the spirit of our harmless-error reasoning in *Cook I*, VA's denial of the requested hearing here is not consistent with the solicitous guarantee of claim development evident from the specific sections and overall structure of the VA claims and appeals process. *See* 28 Vet.App. at 344 (citing 38 U.S.C. § 5103A (regarding VA's duty to assist a claimant in developing evidence)). And this point is underscored because the Board did not even acknowledge the appellant's hearing request in the decision on appeal. Given all this analysis, and as in *Cook I,* we can't conclude that the error in this case was harmless. *See id.* (citing 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *see also Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir.

---

[10] The Federal Circuit in *Cook II* didn't address this portion of *Cook I* at all; because *Cook II* affirmed *Cook I*, we consider *Cook I's* harmless-error analysis to be consistent with the Federal Circuit's reasoning in *Cook II* such that we can rely on it here. But even if that were not the case, we would follow *Cook I's* harmless-error analysis of our own accord.

[11] The sentence in *Cook I* to which we refer follows: "Limiting a claimant to a single Board hearing without regard to the stages of appellate proceedings that have occurred, especially in the face of an assertion that he or she wishes to submit additional evidence in the form of testimony, is not consistent with the solicitous guarantee of claim development evident from the specific sections and overall structure of the VA claims and appeals process." 28 Vet.App. at 344 (citing 38 U.S.C. § 5103A (regarding VA's duty to assist a claimant in developing evidence)).

[12] *E.g.*, R. at 1078-1129 (series of Sept. 15, 2016, examinations and disability benefits questionnaires).

2004) ("Where the effect of an error on the outcome of a proceeding is unquantifiable, however, we will not speculate as to what the outcome might have been had the error not occurred."); *Arneson v. Shinseki*, 24 Vet.App. 379, 389 (2011) (finding prejudice when error "could have altered the Board's determination[s]").

We recognize that the Secretary asserts that the appellant has not shown prejudicial error because she could have submitted information to the Board at any time in writing. Secretary's Supp. Memo. at 14-19. We don't agree. *See Cook I*, 28 Vet.App. at 344 (rejecting the same argument). The argument that the opportunity to submit relevant information in writing is equivalent to the opportunity to present it at a Board hearing cannot be squared with the fact that Congress specifically codified Board hearing rights because of the unique benefits of that opportunity. *See id.* at 344 (citing internally to part III.A. of the opinion, in which we discussed the "history and role of the personal hearing in Board adjudications"). In particular, in this case a hearing would have provided the appellant the ability to address and respond to any specific Board member questions relating to the new evidence and testimony she was submitting. *See id.* And there is also the intangible, but nonetheless important, point that an adjudicator would be able to observe the demeanor of a veteran at a hearing, which reading a written submission would not allow. In these circumstances, similar to those in *Cook I*, we're unable to say that the error here was not prejudicial to the appellant. *See id.*

Therefore, we conclude that the denial of the appellant's right to a hearing was error. We therefore vacate the July 31, 2017, Board decision and remand this matter for further proceedings. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is warranted "where the Board has incorrectly applied the law"). On remand, the appellant may submit additional evidence and argument, including the arguments raised before the Court and has 90 days to do so from the date of VA's postremand notice. *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order); *see also Clark v. O'Rourke*, 30 Vet.App. 92, 97 (2018). The Board must consider any such additional evidence or argument submitted. *Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Board must also proceed expeditiously. 38 U.S.C. §§ 5109B, 7112.

## III. CONCLUSION

After consideration of the parties' briefs and oral arguments, the record on appeal, and the governing law, the Court VACATES the July 31, 2017, Board decision and REMANDS the matter for further proceedings consistent with this opinion.